UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-21654-CIV-SEITZ/DUBÉ

GUILLERMO CALDERON,

    Plaintiff,

v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

## REPORT AND RECOMMENDATION

THIS CAUSE is before this Court on the Motion for Judgment filed by the Plaintiff (D.E. #14) and the Motion for Summary Judgment filed by the Defendant (D.E. #15) pursuant to a Clerk's Notice of Magistrate Judge Assignment entered by the Clerk of Court, United States District Court for the Southern District of Florida. The issue before the Court is whether the record contains substantial evidence to support the denial of benefits to the Plaintiff, Guillermo Calderon (hereinafter "Calderon" or "Plaintiff").

### I. FACTS

Calderon filed applications for disability insurance benefits and supplemental security income on June 27, 2008, which asserted disability as of November 1, 2007.[1] The applications were denied initially and on reconsideration. (R. 68-71, 72-79, 84-89). Following a hearing on May 26, 2010 (R. 44-67), the ALJ issued a decision denying the request for benefits. (R. 20-43). A request for review

---

[1] All references are to the record of the administrative proceeding filed as part of the Defendant's answer. The applications were not included within the record but were noted in the ALJ's decision. (R. 23).

filed with the Appeals Council was denied. (R. 1-5).

The Plaintiff, age 32 at the time of the hearing on May 26, 2010, testified he obtained his GED diploma and had been doing electrical work for the past 15 years. The Plaintiff asserted he stopped working September 1, 2007. Additionally, counsel for the Plaintiff testified the 2008 earning's record was stricken from the record. (R. 48).[2]

Calderon testified he stopped working because he suffered an injury to his lower back while working. (R. 51). The Plaintiff further testified he was treated by two doctors during 2007 and 2008. In 2009, the Plaintiff testified he saw a doctor once a month or once every two months. Calderon further asserted he underwent surgery for a spinal cord implant stimulator. (R. 52). The Plaintiff was initially treated in the ER for two days in 2007 and was hospitalized a second time in 2008 due to an overdose on medication. Thereafter, in 2010, the Plaintiff stated he was hospitalized for one day for surgery regarding the implantation of the spinal cord stimulator. (R. 53).

Additionally, Calderon testified he had been treated by a psychologist and initially began treatment in 2008. (R. 53). The Plaintiff claimed he saw the psychologist twice in 2008 and had recently been treated for one day the month prior to the hearing by a psychologist at the University of Miami Hospital. (R. 54). Calderon testified he was not prescribed medication by the psychologist in 2010, however, he had been provided medication in 2008. The Plaintiff stated he was currently taking four medications to relieve his pain. (R. 55).

According to the Plaintiff, he had a driver's license, owned a car, and drove the car an average of 15 miles every day. (R. 55). Calderon testified he drove to pick up and drop off his children at school. Additionally, Calderon testified he drove to the hearing. The Plaintiff stated he

---

[2] Earnings Information from the Social Security Administration reveals the Social Security earnings record from $13,853.00 to $0.00 for the Tax Year 2008. (R. 124).

2

could walk a distance of two blocks, stand for 15 minutes, sit for 15 minutes and lift 15 to 20 pounds. (R. 56).

Calderon testified he did not cook, wash dishes, clean or do laundry because his girlfriend did them. Calderon stated he watched television for an hour or two and he helped his children with their homework. The Plaintiff further asserted he stopped going to church because it was far from his current home. (R. 57). Calderon stated he took his kids to the park once a month. (R. 58).

Counsel for the Plaintiff asked why the Plaintiff was unable to sit or stand for no longer than 10 to 15 minutes at a time, to which the Plaintiff asserted that he would experience burning pain in his lower back and down through his left leg. To relieve the pain, the Plaintiff stated he would either take pills or he would get up. (R. 58). The Plaintiff testified he had an office chair that he used to move around his home and preferred not to elevate his feet because of the pain in his lower back. (R. 58-59).

The Plaintiff testified the side-effects from his medications included drowsiness and headaches. Calderon testified the nerve stimulator in his back provided relief by reducing the pain, however, he continued to have trouble sitting and standing. (R. 59). Calderon testified prior to the implantation of the nerve stimulator he had received nerve blocks and injections without a positive result. (R. 60).

According to Calderon, during a typical day he would feed his baby and play with him. The Plaintiff testified he had difficulty putting on his socks and tying his shoes as well as getting up from the bed. (R. 60). The Plaintiff asserted he did not experience any difficulties bathing himself, although during the winter he experienced a small increase in pain. (R. 61).

The Plaintiff testified Dr. David Lindley performed the surgery for the placement of the nerve stimulator. (R. 61). The Plaintiff further testified he was treated by Dr. Aparicio and Dr. Calvo and

was informed by both physicians that his condition was chronic. (R. 62). Calderon testified he would be unable to lift 15 to 20 pounds on a daily basis and that he was told he should lift less than that due to a potential increase in pain. (R. 62-63).

The Plaintiff claimed a good day for him was spending time with his kids and family. Further, the Plaintiff stated on a good day, his pain would be a 7 or 8 on a pain scale of 1 to 10. On a bad day, the Plaintiff experienced pain at a level 10 and sometimes his pain would remain at a level 10 after taking medication. (R. 63). Calderon testified he did not sleep through the night and he had to take pills, then after he took his pills he would have to rest. (R. 64).

In addition to the testimony presented at the hearing, medical records were submitted to the ALJ. However, a review of the medical records and the specific issues raised by the Plaintiff in his Motion for Judgment shows that the resolution of the issues do not require this Court to specifically set out all the medical evidence in detail. Accordingly, this Court will discuss the legal issues involved and will incorporate the facts as appropriate within the arguments presented below.

After a hearing and review of the record, the ALJ issued an opinion finding that the Plaintiff had the following severe impairments: back pain and depressive disorder. The ALJ determined that the Plaintiff did not have an impairment or a combination of impairments that met or medically equaled one of the listed impairments. (R. 25). The ALJ further determined that the Plaintiff had the residual functional capacity to perform the full range of work at all exertional levels with some non-exertional limitations. (R. 28). The ALJ found the Plaintiff could perform his past relevant work as an electrician. (R. 36). The ALJ concluded that the Medical Vocational Rules supported a finding that he was not disabled, and as such, he was not disabled within the meaning of the Social Security Act. (R. 36-37).

## II. LEGAL ANALYSIS

Judicial review of the factual findings in disability cases is limited to determining whether the record contains substantial evidence to support the ALJ's findings and whether the correct legal standards were applied. 42 U.S.C. section 405(g); Richardson v. Perales, 402 U.S. 389, 401 (1971); Kelley v. Apfel, 185 F.3d 1211, 1213 (11th Cir. 1999); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "Substantial evidence" is more than a scintilla, but less than a preponderance and is generally defined as such relevant evidence which a reasonable mind would accept as adequate to support a conclusion. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997).

In determining whether substantial evidence exists, the court must scrutinize the record in its entirety, taking into account evidence favorable as well as unfavorable to the Commissioner's decision. Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988). The reviewing court must also be satisfied that the decision of the Commissioner correctly applied the appropriate legal standards. See, Bridges v. Bowen, 815 F.2d 622, 624 (11th Cir. 1987). The court may not reweigh evidence or substitute its judgment for that of the ALJ, and even if the evidence preponderates against the Commissioner's decision, the reviewing court must affirm if the decision is supported by substantial evidence. See, Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Baker v. Sullivan, 880 F.2d 319, 321 (11th Cir. 1989).

The restrictive standard of review set out above applies only to findings of fact. No presumption of validity attaches to the conclusions of law found by the Commissioner, including the determination of the proper standard to be applied in reviewing claims. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). The failure by the Commissioner to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.

Cornelius v. Sullivan, 936 F.2d 1143, 1145-1146 (11th Cir. 1991); See also, Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

Social Security regulations establish a five-step sequential analysis to arrive at a final determination of disability. See, 20 C.F.R. section 404.1520; 20 C.F.R. section 416.920 (a)-(f).

The ALJ must first determine whether the claimant is presently employed. If so, a finding of non-disability is made, and the inquiry ends. 20 C.F.R. section 404.1520(b). In the second step, the ALJ must determine whether the claimant suffers from a severe impairment or combination of impairments. If such a finding is not made, then a finding of non-disability results, and the inquiry ends. 20 C.F.R. section 404.1520(c).

At step three, the ALJ compares the claimant's severe impairments to those in the listing of impairments. 20 C.F.R. section 404.1520(d), subpart P, appendix I. Certain impairments are so severe, whether considered alone or in conjunction with other impairments, that if such impairments are established, the regulations require a finding of disability without further inquiry into the claimant's ability to perform other work. See, Gibson v. Heckler, 762 F.2d 1516, 1518, n.1 (11th Cir. 1985). If the impairment meets or equals a listed impairment, disability is presumed, and benefits are awarded. 20 C.F.R. section 404.1520(d).

Step four involves a determination of whether the impairments prevent the claimant from performing his or her past relevant work. If the claimant cannot perform his or her past relevant work, then a prima facie case of disability is established and the burden of going forward with the evidence shifts to the Commissioner to show, at step five, that there is other work available in the national economy which the claimant can perform. 20 C.F.R. section 404.1520(e)-(f).

The claimant bears the initial burden of proving that he is unable to perform previous work. See, Barnes v. Sullivan, 932 F.2d 1356, 1359 (11th Cir. 1991). The inability to perform previous

work relates to the type of work performed, not to merely a specific prior job. See, Jackson v. Bowen, 801 F.2d 1291, 1293 (11th Cir. 1986).

The Plaintiff's first point of contention is that the ALJ erred in discounting the opinion of treating physicians, Drs. Aparicio and Calvo.

The opinion of a treating physician is entitled to substantial weight unless good cause exists for not heeding the treating physician's diagnosis. Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997). Good cause has been seen when the treating doctor's opinion was not bolstered by the evidence; the evidence supported a contrary finding or the opinion was conclusory or inconsistent with the physician's own medical records. If the ALJ disregards the opinion of a treating physician, the ALJ must clearly articulate his reasons. See Phillips v. Barnhart, 357 F.3d 1232, 1240-1241 (11th Cir. 2004).

With regard to the opinions of Drs. Aparicio and Calvo the ALJ stated the following:

> Little weight is given to the opinions of Dr. Aparicio and Dr. Calvo because they are inconsistent with the medical evidence of record. For instance, on physical examination on June 26, 2009 at University of Miami Hospital the claimant did not use an assistive device for walking. He had full range of motion with flexion, extension, rotation, and sideways bending of the upper spine. There was negative straight leg test and he had 5/5 strength in the upper extremities bilaterally and with hip, knee, and ankle flexion and extension of the right lower extremity. On May 13, 2010 claimant carried a cane but it was observed that he walked well without it. He also had an elastic back brace which he also did equally well without. He had normal gait and station. He was able to heel-walk, toe-walk and walk on the side of the foot. Straight leg and reverse straight leg raise were 90 degrees. Sensory, motor and deep tendon reflexes were all intact. In fact, the consultative doctor noted that it was unusual to have a spinal stimulator used when there was no specific diagnosis made, except for discomfort, and there had been no failed procedures previously. The doctor opined that the claimant did not have evidence of organic disease and orthopedic disability. Range of motion was within normal limits in his cervical spine and lumbar spine.

(R. 35) (citations omitted).

The medical records from Raul T. Aparicio, M.D. noted that in November 2007, the physician personally reviewed the x-rays from Palm Springs Hospital and found that there was no evidence of a herniated disc. (R. 378).[3] The doctor further stated that the Plaintiff was on a no-work status for two weeks and then he would be progressed to light duty status at work. On May 23, 2008, while Dr. Aparicio noted that there was decreased sensation on the S1 on the left side, there was no weakness at the L4-5 and S1. The Faber's test was negative. Dr. Aparicio diagnosed the Plaintiff with lumbar pain with left leg radiculitis, and in his opinion, the Plaintiff suffered from a herniated disc at the L5-S1 and should be evaluated by a spine surgeon. (R. 351).

In September 2008, Ignacio J. Calvo, M.D., performed an Initial Orthopedic Evaluation on the Plaintiff; reviewed x-rays taken on the day of the evaluation; and diagnosed the Plaintiff with acute left lumbar sciatic, radiculapathy of the lumbar spine, and a herniated disc at the level of L5-S1. (R. 450-454). Dr. Calvo also referred the Plaintiff to a neurosurgeon for further treatment. (R. 451).

In contrast, on January 17, 2008, Neil Weisman, M.D., evaluated the Plaintiff and found that based on his history, radiographic findings and nerve conduction studies, the exact etiology of the Plaintiff's complaints of pain were unclear. (R. 538-540). The Plaintiff was noted to have some neutral irritation relating to underlying disk pathology at the L4 and L5-S1 regions and steroid injections were recommended. Dr. Weisman described the goal of the initial injection would be to correlate the Plaintiff's pain complaint and the MRI evidence of the abnormality, and to provide additional diagnostic information to determine if the pain would be reduced. (R. 540).

Similarly in 2008, Steven Vanni, M.D., a neurological surgeon, reviewed the Plaintiff's x-

---

[3] A duplicate copy of the November 9, 2007 evaluation was included in the record. (R. 563-566).

rays and found them to look normal with the exception of a small central bulge at L5-S1 and some bulging at the L4-5. (R. 522-523).

On May 13, 2010, the Plaintiff was evaluated by Joel P. Kallan, M.D., P.A, an orthopedic surgeon who noted that Calderon carried a cane even though he was able to walk well without it. (R. 584-586). Additionally, the Plaintiff was noted to have an elastic back brace that the physician concluded was not needed. Calderon had no physical evidence of organic disease and he had a normal gait and station. (R. 585). Sensory, motor, and deep tendon reflexes were all intact. Dr. Kallan further indicated it was unusual that the Plaintiff had a spinal stimulator when there was no specific diagnosis made, except for discomfort; and there were no previously failed procedures. Dr. Kallan noted the EMGs and MRI showed minimal changes with a September 2008 MRI documenting a disk protrusion at the L4-L5 and L5-S1, but no compression of the nerve roots. Dr. Kallan concluded Calderon did not have "any real physical evidence of organic disease and orthopedic disability." (R. 586).

This Court previously held that, a treating physician's opinion will be given controlling weight if it is well supported by medically acceptable clinical and diagnostic techniques and is consistent with other evidence in the record. Holley v. Charter, 931 F. Supp. 840, 849 (S.D. Fla. 1996). Further, a treating doctor's opinion is entitled to more weight than a consulting doctor's opinion. Wilson v. Heckler, 734 F. 2d 513, 519 (11th Cir. 1984).

In the instant matter, contrary to the Plaintiff's assertion that the ALJ relied on select medical findings, the ALJ stated the manner in which the opinion of Drs. Aparicio and Calvo were not supported by the record finding that their opinions were inconsistent with the medical record. The ALJ cited to a number of medical records documenting the Plaintiff's normal gait as well as the absence of the need for a cane. Further, the ALJ did not pick through portions of the opinions of

Drs. Aparicio and Calvo, taking only parts that were favorable to his finding. Rather, the ALJ cited to a number of progress notes, evaluations, and an application for a disabled person parking permit, before according the opinion of each physician little weight. This Court finds that the ALJ correctly established good cause for limiting the weight accorded to the opinions of Drs. Aparicio and Calvo. Accordingly, the Court does not find that error is present and the ALJ's findings of the opinion of the treating physician is supported by substantial evidence.

The Plaintiff's second point of contention is that the ALJ erred by discounting the Plaintiff's testimony with regard to his pain.

The credibility of the Plaintiff's testimony must also be considered in determining if the underlying medical condition is of a severity which can reasonably be expected to produce the alleged pain. Lamb, at 702. If the ALJ discredits subjective testimony, he must articulate explicit and adequate reasons for doing so. Wilson v. Barnhart, 284 F. 3d 1219, 1225 (11th Cir. 2002). Failure to articulate the reasons for discrediting subjective testimony requires as a matter of law, that the testimony be accepted as true. Id.

In the instant matter, the Plaintiff's argument must fail as the ALJ provided explicit and adequate reasons for rejecting the Plaintiff's testimony. The ALJ stated as follows:

> After careful consideration of the evidence, I find that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> First, that claimant has activities of daily living which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. The claimant testified that he had a driver's license and drove no more than 15 miles per day. He drove his child to school and back as well as drove to his doctor's appointment. He also drove to the hearing. He watches television for

> 2 hours per day and will help with homework. The claimant further testified that he may take his children to a park once a month. He plays a little with his baby and occasionally bottle feed[s]. The claimant indicated that he does nothing at home because his fiancé does everything.
>
> ...
>
> Although the claimant has received various forms of treatment for his physical impairment, which would normally weigh somewhat in the claimant's favor, the record also reveals that the treatment has been generally successful in controlling those symptoms. The claimant testified that the implanted stimulator has helped with pain and has reduced the need to take oral medications which causes some side effects.

(R. 34).

The ALJ laid out the precise portions of the medical record that were inconsistent with the Plaintiff's testimony. See, Moore v. Barnhart, 405 F.3d 1208, 1212 (11th Cir. 2005) (upholding the ALJ's credibility determination, which relied on the inconsistencies between the claimant's "descriptions of her diverse daily activities and her claims of infirmity"). In the instant matter, the ALJ identified the inconsistencies between the Plaintiff's testimony and the medical record. The ALJ cited to the medical record that indicated the Plaintiff had improved with the implanted stimulator. Additionally, the Plaintiff was noted to drive a car and play with his children, activities that would require at the very least, a minimal amount of physical exertion.

While, an ALJ may not rely simply on the lack of medical treatment, the allegations of a severe impairment should be supported by medically acceptable clinical and laboratory diagnostic techniques and allegations of pain should be weighed with the overall record which includes clinical data, testimony, demeanor at the hearing, frequency of treatment, response to treatment, use of medications, daily activities, motivations, credibility and residual functional capacity. Watson v. Heckler, 738 F. 2d 1169, 1172-1173 (11th Cir. 1984).

If an ALJ rejects a claimant's testimony on credibility grounds, the ALJ must explicitly state as much and give adequate reasons for that determination. Foote v. Chater, 67 F.3d 1553, 1561 (11th Cir. 1995). There is no requirement that the ALJ refer to every piece of evidence, but the credibility determination must not be "a broad rejection." Dyer, 395 F.3d at 1211. Failure to set out the reasons for the discrediting of subjective pain testimony mandates, as a matter of law, that the testimony be accepted as true. Wilson v. Barnhart, 284 F.3d 1219, 1225 (11th Cir. 2002). In the instant matter, the ALJ specifically stated his reasons for rejecting the Plaintiff's testimony. These reasons are consistent with the regulations and the Eleventh Circuit requirements; as such, this Court finds the ALJ's credibility analysis to be supported by substantial evidence.

The Plaintiff's third point of contention is that new and material evidence submitted to the Appeals Council provides a basis for remand.

Typically, a claimant is allowed to present new evidence at each stage of this administrative process. See, 20 C.F.R. §404.900(b); Ingram v. Comm'r Social Secur. Admin., 496, F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council must consider "new, material, and chronologically relevant evidence and must review the case if 'the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.'" Id. at 1261 (citation omitted).

Further, the Appeals Council's decision to deny review in light of new evidence is subject to judicial review. Couch v. Astrue, 267 Fed.Appx. 853, 857 (11th Cir. 2008) (citing Falge v. Apfel, 150 F.3d 1320, 1324 (11th Cir. 1998). When reviewing the Appeals Council's denial of review, we must "look at the pertinent evidence to determine if the evidence is new and material, the kind of evidence the AC must consider in making its decision whether to review an ALJ's decision." Id. "Evidence of a deterioration of a previously-considered condition may subsequently entitle a claimant to benefit in a new application, but it is not probative of whether a person was disabled

during the specific period of review." Leiter v. Comm'r Social Secur. Admin., 377 Fed.Appx. 944, 950 (11th Cir. 2010) (citation omitted); see, Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987) (remanding because new evidence was determined to be material when new reports offered an objective medical explanation for previously unexplained subjective complaints of pain and inability to work).

The Court is permitted to consider whether remand is appropriate by two methods. Under Section 405(g), the Court may determine whether the Plaintiff is entitled to remand under a "sentence four" remand or a "sentence six" remand. 42 U.S.C. § 405(g). Because the Plaintiff contends the Appeals Council did not consider new and material evidence, a determination of whether the Plaintiff is entitled to a remand under a "sentence four" remand would be appropriate. See, Ingram at 1266-1269;[4] see also, Hoffman v. Astrue, 259 Fed.Appx. 213, 220 (11th Cir. 2007) (determining that under a "sentence four remand," which provides for a remand when "the Appeals Council did not adequately consider the additional evidence," remand was not warranted because the evidence would not have changed the outcome. (citations and internal quotations omitted)).

In the instant case, the Plaintiff submitted evidence to the Appeals Council consisting of a Multiple Impairment Questionnaire completed by Dr. Lindley on July 2, 2010. (R. 615-622). The physician diagnosed the Plaintiff with chronic low back pain with left lower extremity neuropathic pain, and degenerative disk disease. The Plaintiff's prognosis was noted to be "stable." Dr. Lindley further stated the clinical findings that demonstrated his diagnoses included degenerative disk disease on an MRI, left hip flexion muscle testing the presence of pain that was also noted to be a subjective complaint. (R. 615). Dr. Lindley indicated the diagnostic and laboratory test results that supported

---

[4] To compare, a determination of whether the Plaintiff would be entitled to a remand under "sentence six" would be made when new material evidence that was not incorporated into the administrative record for good cause comes to the attention of the district court. Ingram at 1267.

his opinion was an MRI and he declined to speculate on what the Plaintiff's functional limitations were, noting that he was not a rehabilitation physician. (R. 616). The Plaintiff's pain was noted to be a 10 out of 10 without treatment but it decreased to 4 out of 10 with the stimulator treatment. (R. 617). Further, the physician noted the Plaintiff had a history of experiencing pain constantly and Calderon's history also demonstrated that he had pain after prolonged sitting, walking, or lifting. (R. 620-621).

The Plaintiff argues the evidence submitted to the Appeals Council is new and material evidence because the doctor had not previously given any opinion on Calderon's physical limitations. The Court finds the Plaintiff's arguments unpersuasive. The new evidence submitted to the Appeals Council consisted of medical questionnaire that detailed information already included in the record. Dr. Lindley diagnosed the Plaintiff with chronic low back pain and pain of the left lower extremity as well as degenerative disk disease.

The ALJ had previously considered the Plaintiff's diagnoses and found he had a severe impairment of back pain. However, the medical records submitted subsequent to the hearing failed to add increased severity to the diagnoses. For example, Dr. Lindley was asked to identify clinical findings that demonstrated support of the Plaintiff's diagnosis and the physician identified one MRI, one muscle test, and further indicated that pain was subjective. Additionally, Dr. Lindley noted Calderon's pain decreased from 10 to 4 on a ten-point pain scale after the implantation of the stimulator. Dr. Lindley also declined to address any functional limitations caused by the Plaintiff's symptoms because he was not a rehabilitation doctor, thereby adding no new information, and instead relied on the Plaintiff's history of pain to address physical limitations. The Court finds there is no evidence that a medical questionnaire that reiterated the Plaintiff's history of pain would have changed the ALJ's outcome.

Further, the Court notes the Appeals Council admitted the aforementioned medical records into the transcript and in so doing, provided documentation that the additional medical evidence was considered in their determination to affirm the ALJ decision. (R. 4). As such, the Court does not find that the Appeals Council erred in failing to remand this matter to the ALJ. While the additional medical records may have been "new" they were not "material" because they did not contradicted the ALJ's findings. Remand is not warranted to the Commissioner.

### III. CONCLUSION AND RECOMMENDATION

Based on the foregoing, this Court finds that the decision of the ALJ was supported by substantial evidence and that the correct legal standards were applied. Therefore, it is the recommendation of this Court that the decision of the Commissioner be **AFFIRMED**. Accordingly, the Motion for Judgment filed by the Plaintiff (D.E. # 14) should be **DENIED** and the Motion for Summary Judgment filed by the Defendant (D.E. #15) should be **GRANTED**.

Pursuant to Local Magistrate Rule 4(b), the parties have fourteen (14) days from service of this Report and Recommendation within which to serve and file written objections, if any, with the Honorable Patricia A. Seitz, United States District Judge. Failure to file objections timely shall bar the parties from attacking on appeal the factual findings contained herein. Loconte v. Dugger, 847 F.2d 745 (11th Cir. 1988), cert. denied, 488 U.S. 958 (1988); R.T.C. v. Hallmark Builders, Inc., 996 F.2d 1144, 1149 (11th Cir. 1993).

**DONE AND ORDERED** this 31 day of October, 2011.

ROBERT L. DUBÉ
UNITED STATES MAGISTRATE JUDGE